*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, STEWART, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Andrew M. GARRETT**
Master-at-Arms Second Class (E-5)
U.S. Navy
*Appellant*

**No. 202000028**

Decided: 30 March 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Michael D. Libretto

Sentence adjudged 25 October 2019 by a general court-martial convened at Naval Air Station Jacksonville, Florida, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-1, confinement for 2 years, forfeiture of all pay and allowances, and a dishonorable discharge.

For Appellant:
*Robert Feldmeier, Esq.*
*Lieutenant Clifton E. Morgan III, JAGC, USN*

For Appellee:
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

Senior Judge HOLIFIELD delivered the opinion of the Court, in which
Judges STEWART and DEERWESTER joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under NMCCA
Rule of Appellate Procedure 30.2.**

_____

HOLIFIELD, Senior Judge:

Appellant was convicted, contrary to his pleas, of one specification of
sexual assault by causing bodily harm, in violation of Article 120, Uniform
Code of Military Justice [UCMJ], 10 U.S.C. § 920 (2012).[1]

Appellant asserts seven assignments of error [AOEs]: (1) that the evidence is factually insufficient to support his conviction; (2) that the military
judge erred in instructing the panel that it could convict based on an
uncharged theory of criminal liability; (3) that trial defense counsel [TDC]
was ineffective in failing to object to improper expert opinion and for failing
to move to strike the victim's testimony under Rule for Courts-Martial
[R.C.M.] 914; (4) that the military judge erred in admitting a hearsay
statement as a prior consistent statement; (5) that TDC was ineffective for
failing to move to suppress the victim's pretext phone call with Appellant;
(6) that a non-unanimous verdict violated Appellant's Sixth Amendment
rights; and (7) that the evidence was factually insufficient due to the victim's
motive to fabricate.[2] Merging the last AOE with the first and considering but
summarily rejecting the fifth and sixth as being without merit,[3] we address
the remaining AOEs in order. After doing so, we find no prejudicial error and
affirm.

_____

[1] Appellant was acquitted of one specification of sexual assault when he knew or
should have known the victim was asleep.

[2] Assignments of Error 5-7 are raised pursuant to *United States v. Grostefon*, 12
M.J. 431 (C.M.A. 1982).

[3] *See United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992); *United States v.
Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

## I. BACKGROUND

Appellant and the victim, Master-at-Arms Third Class (E-4) [MA3] Golf,[4] were co-workers in the Security Department at Naval Submarine Base Kings Bay, Georgia. Throughout their close working relationship, MA3 Golf never expressed a romantic interest in Appellant. In August 2018, both attended a party at Appellant's off-base apartment, where MA3 Golf consumed several alcoholic drinks and played a game in which players attempted to catch airborne whipped cream in their mouths. After consuming an unknown amount of alcohol and whipped cream, MA3 Golf became sick, vomiting in Appellant's bathroom. As Appellant helped MA3 Golf return to the living room, he attempted to steer her into his bedroom. She very clearly refused, instead choosing to sleep on Appellant's living room couch. Later that night, MA3 Golf awoke to find Appellant penetrating her vagina with his penis. She reacted by pretending to still be asleep.

The following morning, MA3 Golf returned to her nearby apartment and then met with a friend and co-worker, MA3 Sierra. MA3 Golf told MA3 Sierra what had happened the previous night, and the latter advised her that she needed to report the incident to law enforcement.

Soon thereafter, at the local Naval Criminal Investigative Service [NCIS] field office, Special Agent [SA] Charlie directed MA3 Golf to call Appellant under the pretext of wanting to discuss the event in question. During the recorded call, Appellant consistently claimed that the sexual encounter was consensual and that MA3 Golf was a willing and active participant. Appellant later repeated this claim in his own statement to NCIS. At the time SA Charlie met with MA3 Golf, he learned that texts MA3 Golf had exchanged with MA3 Sierra that morning were on MA3 Golf's phone. While SA Charlie did not seize the phone or otherwise capture the text conversation, he did direct MA3 Golf not to delete the texts. But between that day and the trial, the texts were lost.

The victim also met with a nurse, Lieutenant Commander [LCDR] Victor, who performed a sexual assault forensic examination. LCDR Victor described MA3 Golf's demeanor during their meeting as "flat . . . [meaning] blunted emotion, not making eye contact, common with people who have experienced trauma."[5]

---

[4] All names used in this opinion, except those of Appellant, judges, and counsel, are pseudonyms.

[5] R. at 484-85.

Appellant's TC's strategy  was to challenge the veracity of the victim's description of events. To this end, the Defense highlighted memory gaps and discrepancies in MA3 Golf's various statements, suggested motives to fabricate, and presented expert testimony regarding blackouts and how internal and external influences can affect memory.

Additional facts necessary to resolve the AOEs are addressed below.

## II. DISCUSSION

### A. The Evidence Admitted at Trial Was Factually Sufficient to Support Appellant's Conviction

#### 1. Standard of Review

The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987) and Art. 66(c), UCMJ). In doing so, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

To sustain a conviction for sexual assault by causing bodily harm, we must be convinced the Prosecution proved beyond a reasonable doubt that: (1) Appellant committed a sexual act upon MA3 Golf by causing penetration of her vulva by his penis; and (2) Appellant did so by causing bodily harm to MA3 Golf—that is, penetrating her vulva with his penis without her consent. UCMJ art. 120(b)(1)(b), (g)(3).

#### 2. Analysis

Appellant argues that the lack of corroborating evidence, gaps in MA3 Golf's memory, the impact of both internal and external influences on her ability to fill those gaps, and potential motives for her to fabricate create reasonable doubt as to his guilt. Appellant's counsel attacked MA3 Golf's credibility throughout the trial, taking a two-pronged approach. The Defense first laid a foundation to argue that MA3 Golf had suffered an alcohol-induced blackout, unconsciously filling the gaps in her memory to accord with her expressed lack of interest in Appellant and the comments by her friend, MA3 Sierra, that she had been assaulted and needed to report the incident. At the same time, Appellant's counsel attempted to show that MA3 Golf could

not have been experiencing a blackout, based on witnesses' testimony that she did not appear drunk at the party. Finally, they claimed that MA3 Golf's veracity was undermined by her knowledge that an unrestricted report of sexual assault might allow her to transfer duty stations, something she had months earlier expressed a desire to do.

We find these and other questions regarding MA3 Golf's credibility are completely outweighed by the facts on which both MA3 Golf and Appellant agree. First, MA3 Golf had never shown romantic interest in Appellant, including during the party that night. Second, MA3 Golf—whether due to overindulgence in alcohol, whipped cream, or both—was vomiting in Appellant's bathroom shortly before the sexual act occurred. Third, MA3 Golf made very clear to Appellant she did not want to go into his bedroom when Appellant attempted to steer her into it as they left the bathroom minutes after she was sick—a fact that evidences their respective intentions.

Additionally, MA3 Golf reported the sexual assault within hours of leaving Appellant's apartment. She initially declined an expedited transfer when offered. The depth of MA3 Golf's relationship with MA3 Sierra was neither developed at trial nor even mentioned in TDC's argument on findings. And Appellant's description of the sexual act—that he ejaculated on the floor—is contradicted by DNA evidence.

We recognize that we did not personally observe MA3 Golf testify at trial, but the record establishes that her testimony was credible and compelling. Reviewing the entire record, we find the evidence factually sufficient to prove Appellant's guilt beyond a reasonable doubt.

## B. The Military Judge Did Not Err in His Instructions Regarding the Elements of Sexual Assault by Bodily Harm

### 1. Standard of Review

We review de novo whether a military judge properly instructed the members. *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996). A "military judge's denial of a requested instruction is reviewed for abuse of discretion." *United States v. Caruthers*, 64 M.J. 340, 345-46 (C.A.A.F. 2007). In reviewing this denial, we look to whether the requested instruction is correct, whether it is substantially covered by other instructions, and whether the failure to give it deprived Appellant of a defense or seriously impaired his ability to present that defense. *Id.*

### 2. Analysis

Appellant's TDC requested, in part, that the military judge instruct the members that:

[T]here is no allegation that MA3 [Golf] was too intoxicated to consent to sex. You are not permitted to consider whether she was too intoxicated to consent to sex. That is not an issue before you, and as a matter of law, a determination has already been made in this case that MA3 [Golf] was not too intoxicated to consent to sex.[6]

Instead, the military judge provided the following instructions relevant here to bodily harm and consent:

[For sexual assault by bodily harm], the elements are as follows:

One, that . . . the accused committed a sexual act upon [MA3 Golf] by penetrating her vulva with his penis;

Two, that the accused did so by causing bodily harm to MA3 [Golf], to wit: penetrating her vulva with his penis; and

Three, that the accused did so without the consent of MA3 [Golf].

. . . .

[T]he term "bodily harm" means any offensive touching of another, however slight, including any nonconsensual sex act.

The evidence has raised the issue of whether [MA3 Golf] consented to the sexual conduct . . . . All of the evidence concerning consent to the sexual conduct is relevant and must be considered in determining whether the government has proven each of the elements . . . beyond a reasonable doubt. . . .

"Consent" means a freely-given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance or submission resulting from the use of force, threat of force, or placing another person in fear does not constitute consent. . . . Further, a sleeping, unconscious or incompetent person cannot consent.

---

[6] R. at 647. Appellant's TDC conceded that the remainder of the requested instruction was covered by the main instructions. R. at 648. Also, the military judge noted TDC's concession that the Defense was on notice that capacity to consent would be raised by the evidence, and had prepared accordingly. R. at 650.

Lack of consent may be inferred from the circumstances. All the surrounding circumstances are to be considered in determining whether a person gave consent, or whether a person did not resist or ceased to resist only because of another person's actions.

A competent person is a person who possesses the physical and mental ability to consent. An incompetent person is a person who lacks either the mental or physical ability to consent because he or she is:

One, asleep or unconscious;

Two, impaired by a drug, intoxicant or other similar substance; or

Three, suffering from a mental disease or defect, or a physical disability.

To be able to freely make an agreement, a person must first possess the cognitive ability to appreciate the nature of the conduct in question and then possess the mental and physical ability to make and to communicate a decision regarding that conduct to the other person.

The mere fact that MA3 [Golf] consumed alcohol does not render her incompetent and incapable of consenting. . . . You may, however, consider that MA3 [Golf] may have consumed alcohol and the amount of alcohol she may have consumed along with all other evidence relevant to the issue in determining whether MA3 [Golf] consented to the conduct at issue and whether she possessed the cognitive ability to appreciate the nature of the conduct and lacked the physical and mental ability to consent. The government has the burden of proof to establish that MA3 [Golf] did not consent and/or was incompetent to consent to the sexual conduct in question . . . .[7]

The military judge properly found the quoted portion of the TDC's proposed instruction to be an inaccurate statement of the law, citing *United States v. Gomez*, No. 201600331, 2018 CCA LEXIS 167 (N-M. Ct. Crim. App. Apr. 4, 2018) (unpublished). Here, as in *Gomez*, we find that because the Article 120, UCMJ, definition of "bodily harm" includes "any nonconsensual

---

[7] R. at 658-62.

sexual act," and "consent" means "a freely given agreement to the conduct at issue by a competent person," the offense with which Appellant was charged necessarily implicated the victim's competence. Accordingly, MA3 Golf's ability to consent was an issue squarely before the members, making the proposed instruction incorrect and unable to satisfy the first prong of the *Caruthers* test. The military judge's refusal to give the proposed instruction was not error.

On appeal, Appellant also claims that the instruction that the military judge did give regarding consent renders sexual assault by bodily injury (Article 120(b)(1)(B)) multiplicious with sexual assault upon an incapacitated person (Article 120(b)(3)). We disagree. "A charge is multiplicious if the proof of such charge also proves every element of another charge." R.C.M. 907(b)(3)(B). In comparing two statutes for a determination of multiplicity, we are "limited to consideration of the statutory elements of the involved crimes," rather than the pleadings and proof at trial. *United States v. Teeters*, 37 M.J. 370, 376 (C.M.A. 1993).

Sexual assault through incapacitation requires that the Government prove, inter alia, that the victim was *incapable* of consenting and that the accused knew or should have known of said incapacity. UCMJ art. 120(b)(3). Neither of these elements is required to prove sexual assault by bodily harm. For that offense, the Government must prove only (1) the commission of a sexual act and (2) that said act was done by causing bodily harm, *i.e.*, "an offensive touching of another, however slight, including any nonconsensual sexual act . . . ." UCMJ art. 120(g)(3). And, as our superior court has specifically found, proving a victim's "*legal inability to consent* [i]s not the equivalent of the Government bearing the affirmative responsibility to prove that [the victim] *did not, in fact consent*." *United States v. Riggins,* 75 M.J. 78, 84 (C.A.A.F. 2016) (finding on that basis that assault consummated by battery is not a lesser-included offense of sexual assault or abusive sexual contact by placing the other person in fear) (emphasis in original).

The military judge's instructions did not alter the fact that each of the two offenses in question demands proof of an element not required by the other. We therefore reject Appellant's multiplicity argument.

## C. The TDC Was Not Ineffective in Failing to Object to LCDR Victor's Opinion Testimony or Failing to Move to Strike the Victim's Testimony Under Rule for Courts-Martial 914

### 1. Standard of Review

We review claims of ineffective assistance of counsel de novo. *United States v. Captain*, 75 M.J. 99, 102 (C.A.A.F. 2016). To prevail on an ineffec-

tive assistance claim, Appellant bears the burden of proving that the performance of defense counsel was deficient and that Appellant was prejudiced by the error. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)). "We need not apply the *Strickland* test in any particular order; rather, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" *Id.* (quoting *Strickland*, 466 U.S. at 697) (alterations in original). "The test for prejudice when a conviction is challenged on the basis of actual ineffectiveness of counsel 'is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *United States v. Scott*, 24 M.J. 186, 189 (C.M.A. 1987) (quoting *Strickland,* 466 U.S. at 695).

*2. Analysis*

Appellant first avers that his counsel was ineffective for failing to object to LCDR Victor's statement that the affect she observed in MA3 Golf—"flat," "blunted emotion, not making eye contact"—was "common with people who have experienced trauma."[8] Appellant claims the comment was improper expert opinion, as the record shows LCDR Victor testified as a lay factual witness, not an expert. But, even assuming the testimony was improper, we fail to find prejudice. The main thrust of Appellant's defense at trial was that MA3 Golf suffered a blackout, and that internal and external influences led her to manufacture memories to fill the gaps and convince herself she had been sexually assaulted. Thus, the fact she may have been acting in a manner consistent with "people who have experienced trauma" actually fit with TDC's theory.

We next examine whether TDC was ineffective by neither requesting, once MA3 Golf testified, any prior statements of MA3 Golf, or moving to strike MA3 Golf's testimony as a remedy for the Government's presumed inability to provide the lost texts between MA3 Golf and MA3 Sierra as required by R.C.M. 914. Again, we start and end with the second prong of the *Strickland* test, and, again, we find no prejudice. For witnesses called by trial counsel (as was MA3 Golf), the obligations of R.C.M. 914 apply only to statements "in the possession of the United States." Assuming, arguendo, that the texts between MA3 Golf and MA3 Sierra were "statements" within the Rule, they were never in the possession of the United States. The record indicates only that SA Charlie knew of the statements; there was no evidence

---

[8] R. at 484-85.

indicating that he read the texts or at any time possessed MA3 Golf's phone. So Appellant points to the phone's owner, claiming: (1) MA3 Golf's participation in the pretext phone call at SA Charlie's direction made her a government agent; and (2) since MA3 Golf possessed the phone, the texts were in the possession of the United States. Appellant cites no authority for this conclusion, and we find none.[9] Looking to the facts of this case, we find no violation of R.C.M. 914 and, therefore, no prejudice from TDC's failure to claim that there was.

As Appellant has not demonstrated a reasonable probability that, absent either of these alleged errors, the members would have had a reasonable doubt regarding his guilt, we find the claim of ineffective assistance without merit.

**D. Admitting the Victim's Prior Statement Through MA3 Sierra Was Not Plain Error**

*1. Standard of Review*

We review a military judge's admission or exclusion of evidence for an abuse of discretion. *United States v. Finch*, 79 M.J. 389, 394 (C.A.A.F. 2020). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citation and internal quotation marks omitted). "[W]here the military judge places on the record his analysis and application of the law to the facts, deference is clearly warranted." *United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014).

*2. Analysis*

Hearsay is generally not admissible. Mil. R. Evid. 802. A prior consistent statement is not hearsay if: the declarant of the statement testifies and is

---

[9] Appellant does cite *United States v. Bosier*, 12 M.J. 1010 (A.C.M.R. 1982), as authority for treating a government informer's notes as "in the possession of the United States." But we are not persuaded that *investigative notes* in that case, taken by an informer during a *seven-month relationship* with law enforcement, *during the course of the investigation* and *pertaining to the informer's role* in that investigation, are analogous to brief texts made before—and independent of—an investigation, by a victim whose sole role in the investigation was a pretext phone call with her alleged attacker. We decline to ascribe Government possession for the purposes of R.C.M. 914 under the circumstances here.

subject to cross-examination about the statement; the statement is consistent with the declarant's testimony; and the statement is offered either "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying," or "(ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." Mil. R. Evid. 801(d)(1)(B). "Another ground" as used in subparagraph (ii) of the Rule, refers to attacks on credibility other than allegations of recent fabrication or improper influence or motive addressed by subparagraph (i). *Finch*, 79 M.J. at 395. Charges of faulty memory are one such ground. *Id*. (citing *Manual for Courts-Martial*, *United States*, app. 22, Analysis of the Military Rules of Evidence at A22-61 (2016 ed.)). For a prior statement to be admissible under Military Rule of Evidence 801(d)(1)(B)(ii), its proponent must show that "the prior consistent statement [is] relevant to rehabilitate the witness's credibility on the basis on which he or she was attacked." *Id*. at 396.

During its case-in-chief, the Government sought to elicit testimony from MA3 Sierra recalling what MA3 Golf told him the morning after the assault. The Government argued that the statements were admissible under Military Rule of Evidence 801(d)(1)(B)(ii). Objecting, TDC explained that the Defense had not attacked MA3 Golf's credibility by implying she was lying. Rather, the Defense "just exposed . . . potential issues in perception and ability to recall," and that, due to MA3 Golf's blackout state, "this memory was never recorded, and that she would, essentially, be filling in the blanks for a memory that never actually occurred."[10] Finding no connection between the statements to MA3 Sierra and the way in which MA3 Golf's credibility was attacked, such that the statements would not rehabilitate MA3 Golf's credibility, the military judge sustained the Defense's objection, precluding the Government from eliciting the statements.

The Defense subsequently called an expert witness, Dr. Hotel, who explained how memories are recorded and how internal and external influences, or "schema," can cause a person to fill in the gaps in memory caused by an alcohol-induced blackout. One external influence Dr. Hotel discussed was MA3 Sierra's comments to MA3 Golf, explaining how his telling her that "'you need to go to report this,' kind of inferring that this is a reportable event, and you need to go and report this as a sexual assault[,] . . . that could potentially

---

[10] R. at 404, 409.

be influencing and have an impact on how one comes to characterize or recall an event."[11]

After Dr. Hotel testified, the assistant trial counsel [ATC] asked the military judge to revisit his earlier ruling regarding MA3 Sierra's testimony. The ATC argued that the Defense had opened the door to the statements' admission by Dr. Hotel's testimony and attack on MA3 Golf's credibility. The military judge agreed, pointing to Dr. Hotel's "specific example referencing the influence that MA3 [Sierra] might have had on the memory of [MA3 Golf]."[12] He also cited the Defense "calling into question and attacking the witness' credibility on another ground, specifically lack of memory or contamination of that memory."[13] Accordingly, the military judge changed his earlier ruling, finding MA3 Golf's statements to MA2 Sierra were admissible under Military Rule of Evidence 801(d)(1)(B)(ii).

On appeal, Appellant avers that "the allegation was one of contamination," and, since MA3 Sierra's statements to MA3 Golf occurred before she told him of the assault, any subsequent statements by MA3 Golf were "contaminated."[14] Therefore, he reasons, the prior consistent statements in question are not relevant to rehabilitate MA3 Golf's credibility.

We disagree. When the Defense asked Dr. Hotel about external influences, the expert discussed how what MA3 Sierra said to MA3 Golf could have influenced how the latter came to remember the event. The reference to MA3 Sierra's potential influence, as the military judge rightly found, made the conversation's contents relevant. In fact, the military judge's ruling was ultimately supported by MA3 Sierra's testimony, which provided faint evidence for the conclusion that MA3 Sierra was somehow able to influence MA3 Golf's memory before she told him what happened. MA3 Sierra's testimony contains only a slight, vague description of his meeting with MA3 Golf. After MA3 Golf texted him and asked to meet, he picked her up. She was "quiet for a minute, just like an ominous—like, there's definitely something that needed to be said type of feeling."[15] Based on how MA3 Golf was acting, MA3 Sierra "had an idea where she was going," and stopped her

---

[11] R. at 609-10.

[12] R. at 630.

[13] *Id.*

[14] Appellant's Br. at 35.

[15] R. at 633.

before she said anything.[16] The record does not indicate what was said next, or by whom. Clearly, at some point, MA3 Golf described the sexual assault, and MA3 Sierra asked her if she wanted to report the assault. But the *order* in which this conversation occurred—a key element of Appellant's claim of contamination—is missing. Thus, the details of the conversation bore directly on the utility of Dr. Hotel's opinion concerning the potential influence of MA3 Sierra's words on MA3 Golf's memory.

We also disagree with Appellant's narrow portrayal of the Defense's attack. The allegation of contamination by MA3 Sierra was simply part of a broader attack alleging that MA3 Golf had little or no accurate memories of the event. A fresh report, such as MA3 Golf describing the assault to MA3 Sierra only hours after the event, can serve to rebut such a charge and here provides additional support for our conclusion that MA3 Golf's statements to MA3 Sierra were properly admitted under Military Rule of Evidence 801(d)(1)(B)(ii).

While it would have been better had the military judge provided a more detailed explanation of his ruling, his brief comments show that he understood and correctly applied Military Rule of Evidence 801(d)(1)(B)(ii). And we see nothing in the record that indicates he abused his discretion in finding that the prior statements would rehabilitate MA3 Golf's credibility regarding alleged lack or contamination of memory. Accordingly, we find no error.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the finding and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred. UCMJ arts. 59, 66. Accordingly, the finding and sentence are **AFFIRMED**.

Judges STEWART and DEERWESTER concur.

---

[16] R. at 640-41.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court