# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39834**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Wendy A. BARNES**
Captain (O-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 April 2021

————————————

*Military Judge:* Bryon T. Gleisner.

*Sentence:* Sentence adjudged on 17 September 2019 by GCM convened at Keesler Air Force Base, Mississippi. Sentence entered by military judge on 4 December 2019: Dismissal, forfeiture of $500.00 pay per month for three months, and a reprimand.

*For Appellant:* Major Christopher C. Newton, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Jessica L. Delaney, USAF; Captain Alex B. Coberly, USAF; Mary Ellen Payne, Esquire.

Before LEWIS, RAMÍREZ, and CADOTTE, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Judge CADOTTE joined. Senior Judge LEWIS filed a separate opinion concurring in part and in the result.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RAMÍREZ, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, consistent with her pleas, of one charge and three specifications of wrongful use of controlled substances in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a,[1] as well as one charge and one specification of larceny on divers occasions of military property of a value less than $500.00 in violation of Article 121, UCMJ, 10 U.S.C. § 921.

The military judge sentenced Appellant to a dismissal, forfeiture of $500.00 pay per month for three months, and a reprimand. In the convening authority's Decision on Action memorandum, the convening authority took no action on the findings and although she wrote "I take no action on the sentence in this case," she did take action to the extent that she included the language of the adjudged reprimand. The military judge entered judgment on 4 December 2019.

Appellant raises two issues on appeal: (1) whether trial defense counsel provided ineffective assistance of counsel during the presentencing and sentencing portion of her court-martial when he failed to investigate, prepare, and present extenuation and mitigation evidence, and (2) whether trial defense counsel provided ineffective assistance of counsel when he failed to serve discovery requests upon the Government.

Additionally, in light of *United States v. Lopez*, No. ACM S32597, 2020 CCA LEXIS 439 (A.F. Ct. Crim. App. 8 Dec. 2020) (unpub. op.), we consider whether the convening authority failed to take action on the sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).[2]

---

[1] References to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise specified, all other references to the UCMJ and references to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] We did not order the Government to show cause as to why this case should not be remanded. We are familiar with the recent responses submitted by the Government on this issue in prior and pending cases. This decision was made for judicial economy.

We find no relief warranted for the two assignments of error as Appellant failed to demonstrate a lack of sufficient prejudice to prove ineffective assistance of counsel under the Sixth Amendment.[3] We do, however, find the convening authority failed to take action on the entire sentence as she was required to do, and that remand to the Chief Trial Judge, Air Force Trial Judiciary, is required.

## I. BACKGROUND

During the charged timeframe, between 26 November 2018 and 26 December 2018, Appellant was assigned to the Keesler Air Force Base (AFB) Medical Clinic, as an emergency room (ER) nurse. On 20 December 2018, another nurse observed Appellant working a "PYXIS" drug dispensing machine, while off-shift in civilian clothes, and slip something into her pocket.[4] When Appellant was confronted by her chain of command, she stated that she had pulled Tylenol for her husband. After being verbally reprimanded, she apologized.

On 26 December 2018, a different nurse found that Appellant had dispensed fentanyl under a patient's name approximately 25 minutes before leaving work. Upon further investigation by medical staff, it was determined that Appellant had dispensed eight vials of fentanyl under three different patient names over the course of two shifts from 25 December 2018 to 26 December 2018, when no medical provider had ordered fentanyl for these patients.

Instead, on 26 December 2018, Appellant used the drug dispensing machine to dispense two vials of fentanyl for herself. She then went to an empty patient room in the ER and injected the fentanyl into a vein on her arm. On the same day, she also dispensed a syringe of diazepam from the drug dispensing machine, went to another empty patient room in the ER and injected it into a vein on her arm. At another point, on the same day, Appellant went back to the drug dispensing machine to dispense a tablet of phenobarbital, and ingested it by swallowing the pill while still in the medication room.

Later that same day Appellant self-reported to the Keesler AFB Mental Health Clinic and told the front-desk clerk, "I have been abusing drugs and I

---

[3] U.S. CONST. amend. VI.

[4] Most drugs are dispensed by the PYXIS machine. In order to dispense drugs using the PYXIS machine, one must first fill out their identification information which must be then verified with their fingerprint. Once their identification is accepted, the person selects a patient's name and picks the drug along with the amount prior to it being dispensed.

want to turn myself in."[5] She provided a blood sample that same day at the Keesler AFB Medical Center, which was tested using the Armed Forces Medical Examiner System (AFMES). Appellant's blood tested positive for fentanyl,[6] diazepam,[7] and phenobarbital.[8]

In the stipulation of fact, Appellant agreed that on 20 separate calendar days, with a total of 123 PYXIS transactions, she wrongfully took drugs from the drug dispensing machine. Appellant explained during the providence inquiry that she wrongfully took pharmaceutical drugs from the PYXIS machine "for [her] personal use, and had no intention of returning them. [She] did this multiple times. [She] took the drugs and ingested them to treat [her] pain symptoms and keep working." Appellant admitted she did not have prescriptions for them and she knew the drugs belonged to the Air Force.

The maximum punishment associated with Appellant's offenses was a dismissal, a maximum of 10 years of confinement, total forfeitures, and the possibility of a fine.[9] There was no pretrial agreement in this case.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

As an initial matter, we note that Appellant raises two separate ineffective assistance of counsel issues alleging failure to investigate, prepare, and present extenuation and mitigation evidence including the failure to file motions and serve discovery requests upon the Government. Nonetheless, we find that we may address them together as the applicable law is the same and both allegations require the same legal analysis.

To support her assignments of error brief to the court, Appellant moved to attach a declaration, which the court granted. In this declaration, Appellant alleges that trial defense counsel was ineffective in the timing of meeting with her, in handling the investigation portion of her case including discovery, in

---

[5] We note that Appellant's voluntary disclosure is not protected as she was already under investigation by her unit at that time. *See* Air Force Instruction 44-121, *Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program*, ¶ 3.8.1.4 (18 Jul. 2018).

[6] Fentanyl is a schedule II controlled substance. 21 C.F.R. § 1308.12(c) (2017).

[7] Diazepam is a schedule IV controlled substance. 21 C.F.R. § 1308.14(c) (2015).

[8] Phenobarbital is a schedule IV controlled substance. 21 C.F.R. § 1308.14(c) (2015).

[9] Although a fine was discussed, the military judge did not tell Appellant that a fine was part of the maximum authorized punishment.

obtaining mitigation material, in handling the Alcohol and Drug Abuse Prevention and Treatment Program (ADAPT) evidence, and in preparing her sentencing case "in haste." We issued an order compelling Appellant's trial defense counsel to produce an affidavit or declaration in response to Appellant's claim of ineffective assistance of counsel. The court granted a government motion to attach trial defense counsel's declaration which addresses explains each issue raised by Appellant.

After considering the submitted declarations and the record of trial,[10] we find that Appellant failed to demonstrate a lack of sufficient prejudice to prove ineffective assistance of counsel.

### 1. Additional Background

Appellant begins by alleging that trial defense counsel was deficient in how long it took for him to meet with her. Appellant states that she went to the Office of the Area Defense Counsel (ADC) on 26 December 2018, but that he was not there. She explains that she spoke with an Airman[11] instead and did not actually meet with trial defense counsel until around early February 2019.

Appellant next states that she questioned the blood test that led to the positive urinalysis[12] results for certain substances, but that trial defense counsel explained to her that requesting a forensic toxicologist would just prolong the case. She also writes that she told trial defense counsel about all of her pain issues and gathered all her medical records, which she gave to trial defense counsel to support her request for a retirement in lieu of court-martial (RILO)[13] package, but that trial defense counsel did not offer these medical records as evidence in her court-martial.

Appellant also alleges trial defense counsel was not adequately focusing on her case and "was preparing in haste." Her examples are: (1) her character letters came in late and it seemed to her that all of the paperwork for the court-

---

[10] We considered Appellant's and trial defense counsel's declarations to resolve the raised issues. *See United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020) (holding Courts of Criminal Appeals may consider affidavits when doing so is necessary for resolving issues raised by materials in the record); *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991).

[11] Presumably this was the defense paralegal at the ADC office.

[12] We note that while Appellant uses the word "urinalysis," the positive results which supported the charges in this case were from blood, not urine.

[13] Appellant was a prior enlisted member of the Air Force before she was commissioned as an officer. Before trial, Appellant requested to retire at the highest grade she held as an enlisted member. The Secretary of the Air Force's designee denied Appellant's request after trial, but before the military judge entered judgment.

martial was done at the last minute; (2) there were many errors in the paperwork the day court commenced, requiring matters to be renumbered and initialed; (3) on the eve of her court-martial, trial defense counsel informed her that they would not be able to reference any of her ADAPT participation; and (4) trial defense counsel asked very few cross-examination questions of one government witness and no questions of another government witness.

As it relates to ADAPT, Appellant claims that her alcohol and drug abuse counselor and the ADAPT program manager told her that they would be willing to testify on her behalf and that she shared this with trial defense counsel. Appellant's belief is that trial defense counsel neither sought nor obtained her ADAPT or other mental health records, other than what she gave him to include with her RILO submission. Additionally, Appellant states that trial defense counsel asked her if she was concerned about anything in her ADAPT records and that although she told him that she was not, trial defense counsel was concerned—which Appellant did not understand. Appellant concludes that to her, it seemed trial defense counsel provided no defense or protection for her and did not advocate to admit evidence that was crucial to her case. She concedes that she "ultimately decided to plead guilty at [her] court-martial."

Trial defense counsel agreed that when Appellant went to the ADC office on 26 December 2018, he was not in the office. However, he points out that Appellant entered in-patient rehabilitation shortly thereafter. Additionally, according to trial defense counsel, on or about 9 January 2019, Appellant's husband went to the ADC office to make an appointment for Appellant as she did not have regular access to phone or email while in the rehabilitation center. Trial defense counsel explains that they did meet on the earliest day Appellant was available.

With regard to discovery and experts, trial defense counsel explains that while there was no formal defense discovery request, an "extensive and complete" discovery did take place. Trial defense counsel indicates that he had access to the relevant evidence and received significant amounts of discoverable material in this case even in the absence of a formal discovery request. Trial defense counsel explains that he received the "drug results/litigation packet" from the AFMES and the report of Appellant's wrongful PYXIS access, along with the Air Force Office of Special Investigations (AFOSI) case file and Report of Investigation. Based on these reports, trial defense counsel states that he requested an expert forensic toxicologist and an expert consultant qualified to analyze and explain the PYXIS report. Additionally, based on Appellant's medical records, trial defense counsel states that he requested an expert in podiatry. All three defense expert requests were granted.

As to the Defense's expert toxicologist, trial defense counsel states that he consulted with the expert who informed him that the expert could see nothing

wrong with how the Government processed or analyzed Appellant's blood sample nor any other viable defenses based on the evidence. Trial defense counsel also points out that the presence of the drugs in Appellant's blood was consistent with her statements under oath during the guilty plea. As for the blood draw itself, trial defense counsel states that Appellant never indicated to him that there were any real questions about the validity of the search authorization or collection.

With regard to the defense PYXIS expert, trial defense counsel states that the expert reviewed the Government's report of PYXIS activity, but she could find no discrepancy or reason to doubt the validity of the PYXIS report. During the providence inquiry, Appellant's statements were consistent with the PYXIS report regarding the withdrawals of medication. She was able to explain to the military judge how, when, and how many drugs she was withdrawing using the PYXIS machine.

Trial defense counsel then discusses the ADAPT records. It appears trial defense counsel did intend to offer into evidence the ADAPT records or at least a favorable letter from her counselors which referenced the records, but he states that the "Government filed its motion[14] to exclude mental-health records, including the letter from Capt Barnes' ADAPT counselors." Trial defense counsel explains that during a telephonic Rule for Courts-Martial (R.C.M.) 802 conference,[15] he asked the military judge whether he would have the opportunity to withdraw "the records" once a ruling was made. Specifically, trial defense counsel asked the military judge if this was a situation where he could know beforehand whether a certain piece of evidence would open the door. According to trial defense counsel, the military judge informed him that "no, if he ruled in the Government's favor, then the [Mil. R. Evid.] 513 protection was gone for [Appellant's] mental-health records and the Government would have the ability to interview her counselors and examine her mental-health records." Trial defense counsel stated that he attempted to do this because of conversations he had with Appellant regarding some potentially damaging mental

---

[14] The motion is entitled "United States Motion to Disclose Statements of the Accused." The Government requested the military judge order disclosure of any statement made by Appellant to a psychotherapist. According to the Government, Appellant sought to introduce a memorandum from two psychotherapists about their expert opinions as to Appellant's mental health diagnosis, treatment, and prognosis. It was the Government's position that because Appellant sought to admit her mental health condition as a matter in extenuation, it would expose her "once-privileged statements."

[15] The "military judge may, upon request of any party or *sua sponte*, order one or more conferences with the parties to consider such matters as will promote a fair and expeditious trial." R.C.M. 802(a).

health records. Given this, and weighing it against the potential benefit of putting in the favorable letter from the ADAPT counselors, trial defense counsel made the decision to inform the military judge that the Defense would not be offering that letter. According to trial defense counsel, this is the same reason that Appellant's unsworn statement required adjustments.

Finally, as to Appellant's assertion that trial defense counsel filed no motions, his response is that while no documents called "motions" were filed, he worked extensively with Appellant with the following matters: prepared and submitted a request for a RILO; successfully petitioned the trial court for a R.C.M. 706 (mental capacity or responsibility) inquiry; successfully petitioned the convening authority for three different expert consultants; consulted with all three experts; and obtained the approval of one expert's travel and live testimony during the presentencing proceeding on Appellant's behalf.

Trial defense counsel's declaration included 12 attachments to support his factual assertions.

### 2. Law

We review claims of ineffective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citation omitted). Appellate courts give great deference to trial defense counsel's judgments and presume "counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Morgan*, 37 M.J. 407, 409 (C.M.A. 1993) (citations omitted).

Ineffective assistance of counsel claims are analyzed under the test set out by the United States Supreme Court: "(1) whether counsel's performance fell below an objective standard of reasonableness; and (2) if so, whether, but for the deficiency, the result would have been different." *United States v. Gutierrez*, 66 M.J. 329, 331 (C.A.A.F. 2008) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). An appellant has the burden to demonstrate "both deficient performance and prejudice." *Id.* (citation omitted).

Courts begin this analysis "presum[ing] that the lawyer is competent" with "the burden rest[ing] on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984) (footnote and citation omitted).

The United States Court of Appeals for the Armed Forces (CAAF) recast the *Strickland* standard by asking:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?

8

> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (alterations in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

An appellant overcomes the presumption of competence only when she shows there were "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. This court does "not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine[s] 'whether counsel made an objectively reasonable choice in strategy' from the available alternatives." *Akbar*, 74 M.J. at 379 (quoting *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)). For this reason, defense counsel receive wide latitude in making tactical decisions. *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (citing *Strickland*, 466 U.S. at 689). This also applies to trial defense counsel's strategic decisions. *Morgan*, 37 M.J. at 410.

Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation omitted). In making this determination, courts must be "highly deferential" to trial defense counsel and make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. This specifically applies to sentencing. "When there is an allegation that counsel was ineffective in the sentencing phase of the court-martial, we look to see whether there is a reasonable probability that, but for counsel's error, there would have been a different result." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citation and internal quotation marks omitted).

The CAAF has instructed that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice [then] that course should be followed." *Id*.

In determining whether to grant a post-trial hearing to resolve a factual matter pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967), we are guided by the standard enunciated in *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). Courts of Criminal Appeals do not "decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Id*. at 243. However, we may resolve competing claims when a post-trial claim is "conclusively refuted as to the alleged facts by the files and records of the case" and "state[s] conclusions instead of facts, contradict[s] the record, or [is] 'inherently incredible.'" *Id*. at 244 (quoting *United States v. McGill*, 11 F.3d 223, 226 (1st Cir. 1993)).

**3. Analysis**

As to the conflicting affidavits submitted by Appellant and trial defense counsel, we have considered whether to order a *DuBay* hearing by relying on *Ginn*. We find that we may resolve any competing claims without such a hearing, as we ultimately decide the issues on the absence of prejudice. Because Appellant has failed to show prejudice we need not address deficient performance.

Following the guidance of our superior court, we find it notably easier to resolve Appellant's claim on a lack of sufficient prejudice. *Captain*, 75 M.J. at 103. Even if Appellant's allegations regarding the performance of trial defense counsel are true and fell measurably below a fallible lawyer, we see no "reasonable probability" that absent the errors "there would have been a different result" in Appellant's decision to plead guilty or in the sentence adjudged by the military judge. *Id.*; s*ee also Gooch*, 69 M.J. at 362.

Regarding the plea decision, Appellant's declaration states that she "ultimately decided to plead guilty" and she hoped the court "would not adjudge a dismissal" so that she "could preserve a chance to retire." At trial, the military judge conducted an inquiry with Appellant that verified she had consulted fully with her defense counsel and received the full benefit of his advice. Each time Appellant answered, under oath, "Yes, sir." Appellant also agreed that she was satisfied that her defense counsel's advice was in her best interest and that she was satisfied with her defense counsel. Many of the concerns Appellant raises before our court regarding trial defense counsel were already known to Appellant at the time of the military judge's inquiry. Apparently, none of them were important enough to Appellant to raise before the military judge during the plea inquiry.

The only questionable matter regarding Appellant's knowledge, at the time of her inquiry with the military judge, was whether her counsel had filed a discovery request with the Government. Even now, Appellant has not claimed that the Government possessed information not previously disclosed that would have been provided upon a discovery request and would have caused her to change her unconditional guilty pleas.[16]

---

[16] Our sister service has also addressed allegations of ineffective assistance of counsel regarding not requesting discovery and found as we do now. *United States v. Oghreikanone*, Army No. 20150447, 2018 CCA LEXIS 113, at *4–5 (A. Ct. Crim. App. 28 Feb. 2018) (unpub. op.) (explaining that to establish ineffective assistance of counsel, a court need not approach the inquiry in any particular order, nor address deficient performance where "appellant has failed to show prejudice").

Appellant believes that trial defense counsel should have obtained and reviewed her ADAPT records. Yet, Appellant has not provided us any excerpt from her own ADAPT records to show how it would have impacted her decision to plead guilty. Under these circumstances, we see no reasonable probability that Appellant's plea decision was affected by any of the alleged deficiencies in her counsel's performance.

Turning to the adjudged sentence, the main concern is a one-page, two-paragraph memorandum dated 17 July 2019 and signed by her ADAPT counselors from Keesler AFB. The favorable letter detailed Appellant's treatment and participation from December 2018 to July 2019. Originally the favorable letter was a proposed defense sentencing exhibit. However, trial defense counsel agreed not to offer it after trial counsel filed a written motion to either interview the ADAPT personnel who wrote the letter under Mil. R. Evid. 513(d)(7) or alternatively have the military judge conduct an in camera review of Appellant's ADAPT records. Once trial defense counsel decided to withdraw the favorable letter as a sentencing exhibit, the trial counsel sought no further relief from the military judge but alerted him that the issue might need to be raised again depending on the rest of the defense sentencing case. To avoid this possibility, trial defense counsel advised Appellant not to reference her ADAPT treatment in her unsworn statement.

It is true that the favorable ADAPT letter would have provided the military judge a few additional details that were not elsewhere in Appellant's sentencing case such as (1) Appellant's mental health diagnoses from ADAPT; (2) her six months of negative medical drug screenings; (3) that she "appeared open and honest" in her treatment and counseling; and (4) that her prognosis was "good" *if* she continued to follow her current path of recovery. However, in our view, none of that information would have significantly changed the military judge's view of Appellant, her crimes, or her treatment, given the other evidence and information before the military judge.

Appellant's ADAPT involvement was not absent from her trial. It was referenced in the stipulation of fact which stated that Appellant "self-reported" on 26 December 2018 to "Keesler Mental Health" where the ADAPT program was located. The military judge also had other evidence of Appellant's positive progress during treatment. One defense character letter noted Appellant "sought and received help and rehabilitation already." A certificate from Laurel Ridge Treatment Center was also admitted showing Appellant "successfully completed" their program on 31 January 2019. Appellant's written unsworn statement described being "nine months clean and in the midst of a challenging but promising recovery journey." The military judge heard Appellant's emotional oral unsworn statement where she explained that she "finally got help"

and described some of the things she had learned about drug dependence, presumably from her treatment. Appellant requested not to be dismissed from the service. The Government submitted no rebuttal evidence to challenge any of these assertions about Appellant's treatment.

The defense sentencing case also provided detailed explanations of the personal circumstances that Appellant faced in the timeframe before and during the charged offenses and before she began treatment. An expert in podiatry testified as a defense witness regarding some of Appellant's physical issues that caused her significant pain. In sentencing argument, trial defense counsel argued against a dismissal and highlighted Appellant's circumstances and her acceptance of responsibility, her apology, and genuine remorse. Trial defense counsel also argued that Appellant "has worked hard to recover and to heal."

The additional details in the favorable ADAPT letter do not provide a reasonable probability that the military judge would have adjudged a different and lower sentence. Appellant's crimes were serious and committed at the ER, sometimes when she was on duty. Appellant agreed that she stole pharmaceutical drugs by accessing the PYXIS machine 123 times. Government witnesses testified in sentencing on the impact of Appellant's crimes on her unit. The repeated nature of the larceny is obvious. Still, no confinement was adjudged even though the Prosecution argued that the military judge should impose "months" of confinement and the maximum confinement term was 10 years. The dismissal is a severe punishment but it is reasonable to conclude that admission of the favorable ADAPT letter would not have not lessened its probability in this military judge-alone trial.

As addressed in the additional background section, above, there are certain issues not raised in Appellant's assignments of error, but mentioned in her declaration. First, we do not find trial defense counsel not meeting with her on or shortly after 26 December 2018 fell below an objective standard of reasonableness since Appellant was in an in-patient facility immediately after 26 December 2018, with little access to phone or email, and she met with him when she was released. Second, we find no prejudice in receiving last-minute letters of support for mitigation or for the adequacy of cross-examination of government witnesses as Appellant does not provide us with any explanation as to how this may have changed the result of her case.

Because we find a lack of sufficient prejudice, we find that Appellant is not entitled to relief.

**B. Convening Authority Decision on Action**

The military judge signed the Statement of Trial Results (STR)[17] dated 17 September 2019. The convening authority took no action on the findings according to the signed Decision on Action memorandum. However, while the convening authority wrote "I take no action on the sentence in this case," she did take action to the extent that she provided the language for the adjudged reprimand. Appellant does not raise this as an issue, but does mention that the "convening authority declined to take action on Appellant's case."

We find the convening authority failed to take action on the entire sentence as she was required to do, and that remand to the Chief Trial Judge, Air Force Trial Judiciary, is necessary.

**1. Law**

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). Interpretation of a statute and a Rule for Courts-Martial are also questions of law that we review de novo. *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008) (citation omitted).

Executive Order 13,825, § 6(b), requires that the version of Article 60, UCMJ,

> in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60:
>
>> (1) requires action by the convening authority on the sentence;
>>
>> . . . or
>>
>> (5) authorizes the convening authority to approve, disapprove, commute, or suspend a sentence in whole or in part.

*See* 2018 Amendments to the *Manual for Courts-Martial, United States*, 83 Fed. Reg. at 9890.

The version of Article 60, UCMJ, in effect on the earliest date of which Appellant was convicted (26 November 2018), stated "[a]ction on the sentence of a court-martial *shall* be taken by the convening authority or by another person

---

[17] The STR failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has not claimed prejudice and we find none. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).

authorized to act under this section." 10 U.S.C. § 860(c)(2)(A) (2016 *MCM*) (emphasis added); *see also United States v. Perez*, 66 M.J. 164, 165 (C.A.A.F. 2008) (per curiam) ("[T]he convening authority is required to take action on the sentence . . . .").[18] Article 60(c)(2)(B), UCMJ, further stated: "Except as [otherwise] provided . . . the convening authority . . . may approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part." 10 U.S.C. § 860(c)(2)(B) (2016 *MCM*).

The convening authority's action is required to be "clear and unambiguous." *United States v. Politte*, 63 M.J. 24, 26 (C.A.A.F. 2006) (citation omitted).

**2. Analysis**

Appellant was convicted of offenses she committed after 24 June 2014, which is the effective date of Article 60, UCMJ, in the 2016 MCM.[19] The charges and specifications were referred to trial after 1 January 2019; therefore, the Rules for Courts-Martial that went into effect on 1 January 2019 were generally applicable to the post-trial processing of Appellant's case. *See* Executive Order 13,825, § 2, 83 Fed. Reg. at 9889. However, because the earliest date of an offense of which Appellant was convicted is 26 November 2018, in accordance with Executive Order 13,825, § 6, the version of Article 60, UCMJ, in effect prior to 1 January 2019 applied to the convening authority to the extent that it required her to take action on the sentence. 83 Fed. Reg. at 9890. Before 1 January 2019, Article 60, UCMJ (2016 *MCM*), required the convening authority to take action on the sentence in every case. The convening authority's Decision on Action memorandum indicated that she took action specifically to reprimand Appellant, but it did not specify any further action to approve, disapprove, commute, or suspend the other elements of the sentence.

This court addressed a similar issue in its recent en banc decision in *United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416 (A.F. Ct. Crim. App. 20 Nov. 2020) (en banc) (unpub. op.). In *Aumont*, the convening authority signed a memorandum stating that he took "no action" on the findings or sen-

---

[18] In contrast, Article 60a, UCMJ, 10 U.S.C. § 860a, which went into effect on 1 January 2019, does not require the convening authority to take action on the sentence of every court-martial. *See also* R.C.M. 1109(g) (explaining procedures depending on whether or not the convening authority "decides to act on the sentence" in certain courts-martial); R.C.M. 1110(e) (explaining procedures depending on whether or not the convening authority decides to take action on the findings or sentence in certain courts-martial).

[19] *See* National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113–66, § 1702, 127 Stat. 672, 958 (26 Dec. 2013) (establishing 24 June 2014 as the effective date for Article 60, UCMJ, 10 U.S.C. § 860, as it appears in the 2016 *MCM*).

tence, where the charges had been referred after 1 January 2019 but the earliest offense was dated before 1 January 2019. *Id.* at *19. *Aumont* resulted in four separate opinions, reflecting four distinct positions among the judges on this court as to whether the convening authority's statement that he took no action was erroneous and, if so, whether remand for correction was required. *Id.* (*passim*). A majority of the judges—six of the ten judges—concluded the convening authority erred; four of those six judges found the error required remand for corrective action without testing for prejudice, *id.* at *89 (J. Johnson, C.J., concurring in part and dissenting in part), and the other two judges determined that while there was "plain and obvious" error, they found "no colorable showing of possible prejudice" to the appellant. *Id.* at *32–33 (Lewis, S.J., concurring in part and in the result).

We recognize that panels of this court composed of other judges have applied different reasoning in other cases, before and after *Aumont* was issued. *See, e.g.*, *United States v. Cruspero*, No. ACM S32595, 2020 CCA LEXIS 427 (A.F. Ct. Crim. App. 24 Nov. 2020) (unpub. op.); *United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.); *United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.). Nevertheless, we hold the view that—in situations where the convening authority fails to take action on the sentence as required by Executive Order 13,825, and the pre-1 January 2019 version of Article 60, UCMJ—the convening authority has erred.

While the convening authority addressed the reprimand, she did not address the remainder of the sentence. We conclude the convening authority's failure to take action on the entire sentence fails to satisfy the Article 60, UCMJ (*2016* MCM), requirement.

In cases involving a conviction for an offense committed prior to 1 January 2019, the convening authority is required to explicitly state whether the sentence is approved. R.C.M. 1107(f)(4)(A) (2016 *MCM*) (implementing the version of Article 60, UCMJ, applicable to Appellant's case). "If only part of the sentence is approved, the action shall state which parts are approved." *Id.* In this case, while declaring that she was taking no action on the sentence, the convening authority included the text of a reprimand. We find the convening authority's decision on action was incomplete, ambiguous, and deficient. *See Politte*, 63 M.J. at 26. The convening authority's failure to take action on the entire sentence fails to satisfy the requirement of the applicable Article 60, UCMJ. *See Lopez*, 2020 CCA LEXIS 439, at *11.

Our superior court has mandated that when a Court of Criminal Appeals identifies an ambiguity in an action, we must return the case to the convening authority. *Politte*, 63 M.J. at 27 (applying the earlier versions of Articles 60

and 66, UCMJ, 10 U.S.C. §§ 860, 866 (2000), reasoning which we find applicable here). In requiring the deficient action to be returned to the convening authority, our superior court did not evaluate the deficiency for prejudice; the deficiency in the action *ipso facto* required its return. *Id.*; *see also United States v. Scott*, 49 M.J. 160, 160 (C.A.A.F. 1998). For the reasons set forth in the dissenting opinion in *Aumont*, we remand the record to the Chief Trial Judge, Air Force Trial Judiciary, to resolve the error. Unpub. op. at *89 (J. Johnson, C.J., concurring in part and dissenting in part); *see* Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3) (*Manual for Courts-Martial*, *United States* (2019 ed.)).

### III. CONCLUSION

This case is **REMANDED** to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the convening authority's decision memorandum as the action taken on Appellant's adjudged sentence was ambiguous and incomplete.

Our remand returns jurisdiction over the case to a detailed military judge and dismisses this appellate proceeding consistent with Rule 29(b)(2) of the Joint Rules for Appellate Procedure for Courts of Criminal Appeals. JT. CT. CRIM. APP. R. 29(b)(2). A detailed military judge may:

 (1) Correct the Statement of Trial Results;

 (2) Return the record of trial to the convening authority or his successor to take action on the sentence;

 (3) Conduct one or more Article 66(f)(3), UCMJ, proceedings using the procedural rules for post-trial Article 39(a), UCMJ, sessions; and/or

 (4) Correct or modify the entry of judgment.

Thereafter, the record of trial will be returned to this court for completion of appellate review under Article 66, UCMJ.

LEWIS, Senior Judge (concurring in part and in the result):

I agree with my esteemed colleagues that both ineffective assistance of counsel assignments of error should be resolved primarily on a lack of prejudice and that one claim—the delay in trial defense counsel meeting with Appellant after she visited his office on 26 December 2018—did not fall below an objective standard of reasonableness. I concur that Appellant's claims, even if accepted as true, warrant no relief. My agreement on a lack of prejudice should not be interpreted as an endorsement of the approaches used by trial defense counsel to defend Appellant in her general court-martial.

Regarding the convening authority's "Decision on Action" memorandum, I agree that remand to the Chief Trial Judge, Air Force Trial Judiciary, is necessary. I adhere to the approach I have used in prior cases including *United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416, at *29–37 (A.F. Ct. Crim. App. 20 Nov. 2020) (en banc) (unpub. op.) (Lewis, S.J., concurring in part and in the result); *United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246, at *13–16 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.). Here, the convening authority took "no action on the sentence in this case" at least according to the plain language of the "Decision on Action" memorandum. I agree with the majority that this was error given Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860, *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*).

In my view, Appellant forfeited this error as no post-trial motion was filed with the military judge within five days of receipt of the "Decision on Action" memorandum to address whether it was incomplete, irregular, or contained error. *See* R.C.M. 1104(b)(2)(B) *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). To prevail under a plain-error analysis, Appellant must show "(1) there was an error; (2) [the error] was plain or obvious; and (3) the error materially prejudiced a substantial right." *See United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (en banc) (quoting *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)). I would apply the threshold of "some colorable showing of possible prejudice" as the appropriate standard for an error impacting an appellant's request for clemency under the current post-trial processing system. *See, e.g.*, *United States v. Cruspero*, No. ACM S32595, 2020 CCA LEXIS 427, at *14–15 (A.F. Ct. Crim. App. 24 Nov. 2020) (unpub. op.) (quoting *LeBlanc*, 74 M.J. at 660).

Applying the plain-error standard of review, I would find that taking no action on the sentence was a plain or obvious error and that a colorable showing of possible prejudice to Appellant is apparent from the record of trial. In her clemency request, Appellant requested the convening authority disapprove the adjudged forfeitures of $500.00 pay per month for three months. The convening authority had the power to grant this request in full. The convening authority did not explicitly or implicitly deny this clemency request.

In contrast, there is some evidence of the convening authority's intent on the other portions of the sentence in the entry of judgment. For the reprimand, the actual language was included. For the dismissal, the convening authority directed that Appellant be placed on appellate leave pursuant to Article 76a, UCMJ, 10 U.S.C. § 876a. (2019 *MCM*). This direction is consistent with Appellant having an unsuspended dismissal and provides some support that the convening authority implicitly meant to approve the dismissal. Additionally, given

the dates of the charged offenses, the convening authority had no power to disapprove, commute, or suspend the dismissal. 10 U.S.C. § 860(c)(4)(A) (2016 *MCM*).

However, for the forfeitures, I am left with the plain language of the "Decision on Action" memorandum which I find insufficient to show the convening authority denied Appellant's one clemency request. Therefore, remand is appropriate before we complete further appellate review.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court