*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Francis L. CAPTAIN, Sergeant
United States Marine Corps, Appellant

**No. 15-0172**
Crim. App. No. 201300137

Argued October 27, 2015—Decided February 4, 2016

Military Judge: John Maksym

For Appellant: *Lieutenant David W. Warning*, JAGC, USN (argued); *Captain David A. Peters*, USMC (on brief); *Lieutenant Carrie E. Theis*, JAGC, USN.

For Appellee: *Captain Cory A. Carver*, USMC (argued); *Major Suzanne M. Dempsey*, USMC, and *Brian K. Keller,* Esq. (on brief).

Chief Judge ERDMANN delivered the opinion of the court, in which Judges STUCKY, RYAN, and OHLSON, and Senior Judge LAMBERTH joined.

————————

Chief Judge ERDMANN delivered the opinion of the court.[1]

Sergeant Francis L. Captain was convicted, pursuant to his pleas, of a single specification of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012). He was sentenced to a dishonorable discharge, confinement for five years and six months, forfeiture of all pay and allowances, reduction to pay grade E-1, and a fine of $50,000. The convening authority disapproved the fine, but purported to approve the remainder of the sentence, which he characterized as "forfei-

---

[1] Senior Judge Royce C. Lamberth, of the United States District Court for the District of Columbia, sat by designation, pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

ture of all pay and allowances, confinement for 5 years, 6 months, 0 days, and reduction to the lowest enlisted grade." In accordance with the pretrial agreement, the convening authority also suspended the period of confinement in excess of four years. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence as approved by the convening authority in an unpublished opinion. *United States v. Captain*, No. NMCCA 201300137, 2014 CCA LEXIS 518, at *8, 2014 WL 5386765, at *4 (N-M. Ct. Crim. App. July 29, 2014) (as corrected Oct. 16, 2014, and Nov. 4, 2014) (per curiam) (unpublished). The lower court did not acknowledge any inconsistency between the adjudged sentence and the sentence approved by the convening authority. *Id.*

To establish ineffective assistance of counsel, an appellant must demonstrate both "(1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. McIntosh*, 74 M.J. 294, 295 (C.A.A.F. 2015) (citation omitted) (internal quotation marks omitted). In addition, a Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. *United States v. Wilson*, 65 M.J. 140, 142 (C.A.A.F. 2007). We granted review of this case to determine whether Captain received ineffective assistance of counsel during the sentencing portion of his court-martial, and whether the lower court had jurisdiction to affirm a dishonorable discharge where the convening authority failed to "explicitly state" his approval of the discharge in his action.[2] As to the issue of ineffective assistance of counsel, we turn first to the prejudice prong of the analysis and hold that Captain has failed to establish prejudice. As to the jurisdic-

---

[2] We specified the following issues for review:

> I. Whether trial defense counsel provided ineffective assistance of counsel by failing to offer evidence, other than an unsworn statement, in extenuation or mitigation, and by conceding the appropriateness of a dishonorable discharge.

> II. Whether the United States Navy-Marine Corps Court of Criminal Appeals erred in affirming a sentence that included a dishonorable discharge when the convening authority's action did not approve one.

tion of the Court of Criminal Appeals to affirm the dishonorable discharge, we hold that the convening authority's action is ambiguous and the case is therefore returned for corrective action under Rule for Courts-Martial (R.C.M.) 1107(g).

## I. Background

On appeal to the Navy-Marine Corps Court of Criminal Appeals, Captain challenged the effectiveness of his trial defense counsel, claiming that his attorney failed to offer evidence in extenuation and mitigation at sentencing and erroneously conceded the appropriateness of a dishonorable discharge without his consent. *Captain*, 2014 CCA LEXIS 518, at \*2–3, 2014 WL 5386765, at \*1–2. After receiving affidavits from both Captain and trial defense counsel, the lower court concluded it could not resolve Captain's claims without further fact-finding and ordered a hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

Following a *DuBay* hearing, the *DuBay* military judge[3] made extensive findings of fact, which we summarize as follows:

> *Captain's testimony:* Captain provided his counsel with a list of prospective sentencing witness who had agreed to testify on his behalf; when Captain later checked with the potential witnesses, they had not been contacted by his defense counsel; Captain emphasized that his primary goal was to avoid substantial incarceration; his defense counsel had convinced him that the possibility of additional charges was real, placing him in danger of greater exposure to punishment; his counsel also explained the benefits of a pretrial agreement, explained the maximum sentence under the agreement and explained the impact of a dishonorable discharge if one should be awarded; counsel informed Captain that he would ask for a sentence of a couple of years but never mentioned that he would ask for a punitive discharge; Captain recalled the military

---

[3] The same military judge presided over the *DuBay* hearing and the court-martial. However, neither party requested that the *DuBay* military judge recuse himself despite being afforded ample opportunity to do so. Indeed, according to the *DuBay* military judge's findings of fact, "[t]he appellant both directly and via counsel w[as] emphatic that [there was] no objection and wished for [the same military judge] to preside over the *DuBay* hearing."

judge referencing his combat experience during the sentencing proceedings.

*Defense counsel's testimony:* Following his initial review of the evidence, defense counsel believed that the government's evidence was very strong, including DNA evidence that linked Captain to the crime; when he informed Captain of his conclusion, Captain asked him to investigate the possibility of establishing a motive to lie on the part of the alleged victim and her husband; defense counsel investigated and found no evidence of a motive to fabricate; defense counsel made it clear that Captain did not have a strong case and it was in his interest to plead guilty under a pretrial agreement; defense counsel had been informed that additional serious charges might be brought against Captain on the basis of an anonymous tip that the Naval Criminal Investigative Service (NCIS) was investigating; in negotiating a pretrial agreement, defense counsel's goal was to minimize the number of charges Captain would have to face and obtain a confinement cap; when defense counsel learned of a change in the presiding judge, he advised Captain that the new military judge had a reputation for awarding serious punishment; defense counsel advised Captain that he would almost certainly be sentenced to a dishonorable discharge and recommended they request a dishonorable discharge as part of their sentencing strategy, in order to obtain a lesser period of confinement; Captain agreed to request a dishonorable discharge, but defense counsel did not document this conversation or Captain's consent; defense counsel's sentencing strategy was to present the events in question as simply one "bad day in the greater life of a very good Marine"; based on his familiarity with the sentencing practices of the trial judge, defense counsel believed Captain's combat experience would have already been noted by the judge;[4] defense counsel also became concerned that if he called sentencing witnesses, they could be cross-examined as to the new misconduct that the NCIS had uncovered, thereby

---

[4] In an affidavit submitted by trial defense counsel, counsel explains that he "elected to rely upon the fact that the military judge was already aware of [Captain's] deployments," rather than submitting documentation of Captain's military record.

damaging the sentencing strategy; defense counsel made a tactical decision not to seek relief from the dishonorable discharge in clemency, but to concentrate on the eradication of the $50,000 fine; defense counsel explained this to Captain, who agreed with the approach.

The Court of Criminal Appeals found no error with the *DuBay* military judge's findings of fact and adopted them. *Captain*, 2014 CCA LEXIS 518, at *2, 2014 WL 5386765, at *1. The lower court held that counsel's decision not to call character witnesses or present Captain's military record at sentencing was tactical "to avoid opening the door to potentially damaging evidence that the Government could offer in rebuttal," and did "not rise to the level of a Sixth Amendment violation." 2014 CCA LEXIS 518, at *5–6, 2014 WL 5386765, at *3. Similarly, despite counsel's failure to memorialize a record of Captain's acquiescence to the request for a dishonorable discharge, the lower court held that the defense counsel was credible when he testified that he had fully discussed the matter with Captain and, therefore, counsel's performance was not deficient. 2014 CCA LEXIS 518, at *7–8, 2014 WL 5386765, at *3.

## II. Discussion

Ineffective Assistance of Counsel

This court reviews claims of ineffective assistance of counsel de novo, giving substantial deference to a military judge's findings of fact unless they are clearly erroneous. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001).

Captain contends his trial defense counsel was deficient during the sentencing phase of his court-martial when he withheld evidence of good military character and failed to develop a record of Captain's alleged agreement to concede a punitive discharge. According to Captain, these deficiencies were prejudicial because the errors increased the likelihood that he would be dishonorably discharged from the military when a lesser sentence was reasonably attainable.

The government counters by arguing that trial defense counsel was advancing a sentencing theory that would have been destroyed had he opened the door to damaging rebuttal evidence. Furthermore, the government asserts that defense counsel secured Captain's consent to argue for a dishonorable discharge in an attempt to reduce the confinement period adjudged. The government also argues Captain was not

prejudiced because the military judge was unlikely to impose a sentence that did not include a dishonorable discharge regardless of defense counsel's sentencing request or presentation.

To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error. *Strickland v. Washington*, 466 U.S. 668, 698 (1984).

> With respect to *Strickland's* first prong, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689.
>
> As to the second prong, a challenger must demonstrate "a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "It is not enough to show that the errors had some conceivable effect on the outcome…."

*United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citations omitted).

When there is an allegation that counsel was ineffective in the sentencing phase of the court-martial, we look to see "whether there is a reasonable probability that, but for counsel's error, there would have been a different result." *United States v. Quick*, 59 M.J. 383, 386–87 (C.A.A.F. 2004). We need not apply the *Strickland* test in any particular order; rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed." *Strickland*, 466 U.S. at 697; *Datavs,* 71 M.J. at 424–25.

Captain entered a guilty plea to aggravated sexual assault under Article 120 and, in doing so, executed a stipulation of fact in which he admitted that he engaged in abusive sexual contact with the wife of his friend and fellow soldier, by digitally penetrating her buttocks and anus while she was substantially incapacitated or substantially incapable of declining participation. The maximum sentence for the offense was a dishonorable discharge, seven years of confinement, forfeiture of all pay and allowances, reduction to pay

grade E-1, and a fine. The prejudice analysis requires that we determine whether there was a reasonable probability that, but for the alleged errors, the adjudged sentence would have been less than that provided in the pretrial agreement.

As to the failure to call any sentencing witnesses to testify to Captain's good military character, the *DuBay* military judge found that all the potential sentencing witnesses identified by Captain had "anemic prospective value." None of the witnesses identified by Captain had served in combat with him or even knew him prior to the initiation of the criminal proceedings. Therefore, it was "markedly doubtful that [presentation of this evidence] would have made any difference whatsoever in the sentencing dynamic of this case." Certainly the government could have exploited the testimony of any witness who had known Captain only since he had been criminally charged by arguing that the conduct of anyone awaiting trial for such a serious offense might not offer a good indication of that individual's overall military character. Furthermore, trial defense counsel was successful in having the confinement capped at four years in a pretrial agreement. Therefore, for a finding of prejudice, the testimony of the prospective witnesses would have had to reduce the sentence awarded by the military judge to something less than four years and no fine. Under these circumstances, such an outcome is not reasonably probable.

Although defense counsel failed to present documentary evidence of Captain's military record, the military judge explicitly recognized Captain's multiple awards and decorations prior to the plea colloquy at the court-martial. He also expressly considered and gave "great credit" to Captain's combat zone deployments. In light of these considerations and Captain's unsworn statement, the military judge noted that "the most egregious" nature of the crime seemed incongruous with Captain's career and left the court "simply wondering," indicating that defense counsel's sentencing strategy had some effect. In any event, the record reflects that the military judge considered Captain's military record and gave it "great credit." It is therefore not reasonably probable that a documentary presentation of this evidence would have impacted the sentence adjudged.

Moving to counsel's sentencing request for a dishonorable discharge, we begin by noting that while defense counsel is not prohibited from advocating for an accused's wishes in favor of a particular punishment to the exclusion of others,

"[c]ounsel may not … ask a court-martial to impose a punitive discharge when the accused's wishes are to the contrary." *United States v. Dresen*, 40 M.J. 462, 465 (C.M.A. 1994). Thus, where defense counsel concedes the appropriateness of a punitive discharge, "even as a tactical step to accomplish mitigation of other elements of a possible sentence[,] counsel must make a record that such advocacy is pursuant to the accused's wishes." *United States v. Pineda*, 54 M.J. 298, 301 (C.A.A.F. 2001) (citation omitted) (internal quotation marks omitted). One of the reasons we have required documentation in cases such as these is to avoid the very issue we have here, where the appellant and trial defense counsel present diametrically opposed testimony on the issue. That said, we conclude the *DuBay* military judge's findings in this case sufficiently document the conversation between counsel and Captain, and constitute a satisfactory substitute for the lacking contemporaneous memorialization by trial defense counsel. Consequently, Captain has not suffered any prejudice as a result of the trial defense counsel's failure to document the conversation. We continue to stress, however, that it is in the interest of all parties to memorialize these discussions when they occur to avoid unnecessarily wasting time and scarce judicial resources in order to secure post-trial documentation.

## The CCA's Jurisdiction to Affirm the Punitive Discharge

R.C.M. 1107(d)(1) provides the scope of the convening authority's discretion when he or she takes action on the sentence of a court-martial:

> The convening authority may for any or no reason disapprove a legal sentence in whole or in apart, mitigate the sentence, and change a punishment to one of a different nature as long as the severity of the punishment is not increased. The convening or higher authority may not increase the punishment imposed by a court-martial. *The approval or disapproval shall be explicitly stated.*

Emphasis added.

R.C.M. 1107(f)(4)(A) further provides that if only a part of the sentence is approved, the action shall state which parts are approved. Whether the convening authority has met the requirements of R.C.M. 1107, as a question of law, is reviewed de novo. *United States v. Ballan*, 71 M.J. 28, 30 (C.A.A.F. 2012).

After accepting Captain's guilty plea, the military judge sentenced him to a dishonorable discharge, five years and six months of confinement, forfeiture of all pay and allowances, reduction to E-1, and a $50,000 fine. In his clemency submission, Captain did not seek disapproval of the dishonorable discharge but sought disapproval of the $50,000 fine. The pretrial agreement provided for approval of any punitive discharge as adjudged. The pertinent parts of the convening authority's action read as follows:

### APPROVAL

> In the general court-martial case of Sergeant Francis L. Captain the following action is taken on the adjudged sentence; the fine of $50,000 is disapproved. The remaining part of the adjudged sentence as adjudged consisting of forfeiture of all pay and allowances, confinement for 5 years, 6 months, 0 days, and reduction to the lowest enlisted grade is approved.
>
> . . . .

### EXECUTION

> In accordance with the [UCMJ], the Manual for Courts-Martial, applicable regulations and this action, the sentence is ordered executed. Pursuant to Article 71(c), the punitive discharge will be executed[] after final judgment.

According to Captain, the lower court could not affirm the dishonorable discharge adjudged at the court-martial because that portion of the sentence was not approved by the convening authority. Captain also asserts that the convening authority's action effectively disapproved the punitive discharge and substantially complied with the requirements of R.C.M. 1107(d)(1).

In response, the government argues that a plain reading of the convening authority's action evidences an intent to disapprove the fine but approve the remainder of the adjudged sentence, including the dishonorable discharge, since the convening authority ordered the punitive discharge executed after final judgment. According to the government, even assuming the convening authority's action is somewhat ambiguous, the court may remand for corrective action under R.C.M. 1107(g) or look to the surrounding documentation to resolve that ambiguity based on our decision in *United States v. Politte*, 63 M.J. 24, 26 (C.A.A.F. 2006).

In the "Approval" paragraph the convening authority explicitly disapproved the $50,000 fine and in the following sentence he approved "the remaining part of the adjudged sentence as adjudged consisting of all pay and allowances, confinement for 5 years, 6 months and 0 days, and reduction to the lowest enlisted pay grade." Notably the convening authority did not include the dishonorable discharge in the list of punishments he was explicitly approving. However, the "Execution" paragraph provides that "Pursuant to Article 71(c), the punitive discharge will be executed, after final judgment."

We addressed this area in *Politte*, where the convening authority approved the sentence "except for that part of the sentence extending to a Bad Conduct Discharge." 63 M.J. at 25-26. After looking at the pretrial agreement, the recommendations of the staff judge advocate and the request for clemency, the court determined that the convening authority's action was ambiguous and returned the action for clarification. *Id.* at 26–27.

We again addressed this area *Wilson*, 65 M.J. at 141–42, and held that where the convening authority disapproved confinement in excess of three years and three months, but approved the remainder of the sentence "with the exception of the Dishonorable Discharge," the language of the convening authority was clear and unambiguous. As a result, the dishonorable discharge was not approved. However, in *Wilson*, there was no language in the convening authority's action that was inconsistent with or contradicted the convening authority's exception of the dishonorable discharge. *Id.* at 141-42.

In this case, there is no language in the "Approval" paragraph that either explicitly approves or disapproves the dishonorable discharge, but in the following "Execution" paragraph there is language which provides that the punitive discharge will be executed after final judgment. We find the combination of this language to be ambiguous. R.C.M. 1107(g) provides that where the action of a convening authority is "incomplete, ambiguous, or contains clerical error, the authority who took the incomplete, ambiguous or erroneous action may be instructed by [a reviewing authority] ... to withdraw the original action and substitute a corrected action." The action will therefore be returned to the convening authority for corrective action. In taking this action, we pause to underscore the importance of a convening authority

clearly stating his or her approval, disapproval, commutation, or suspension of each aspect of an accused's sentence when taking action pursuant to R.C.M. 1107(d)(1). We further emphasize the vital role that the staff judge advocate or legal officer plays in ensuring the fulfillment of that provision.

## III. Decision

For the above reasons, we conclude that Appellant was not denied the effective assistance of counsel. However, because the convening authority's action was ambiguous, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is set aside and the record is returned to the Judge Advocate General of the Navy for submission to the convening authority to withdraw the original action and substitute a corrected action in accordance with R.C.M. 1107(g). Thereafter, Article 66, UCMJ, and Article 67, UCMJ, respectively, will apply.