# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40056**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Nicholas J. VELASQUEZ**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 19 July 2022

————————————

*Military Judge:* Brett A. Landry.

*Sentence:* Sentence adjudged on 12 January 2021 by GCM convened at Holloman Air Force Base, New Mexico. Sentence entered by military judge on 12 February 2021: Bad-conduct discharge, confinement for 6 months, total forfeiture of pay and allowances, reduction to E-1, and a reprimand.

*For Appellant:* Captain David L. Bosner, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges.*

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

PER CURIAM:

A general court-martial composed of a military judge sitting alone convicted Appellant, pursuant to his pleas, of one charge and two specifications of assault consummated by a battery upon two women by touching their buttocks

with his hand, and one specification of assault consummated by a battery upon his spouse, on divers occasions, by touching her legs, back, and buttocks with his hand. Appellant's pleas to these specifications established three violations of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1] Appellant entered those pleas in accordance with a plea agreement he made with the convening authority who referred the charges and specifications to trial by court-martial.[2]

When Appellant's court-martial convened, the military judge accepted Appellant's pleas and announced findings of guilty to the charged offenses. The military judge sentenced Appellant to a bad-conduct discharge, confinement for six months, total forfeiture of pay and allowances, reduction to the grade of E-1, and a reprimand. In post-trial processing, the convening authority took no action on the sentence, and the military judge entered the findings and sentence as the judgment of the court-martial.

On appeal, Appellant raises two assignments of error: whether (1) Appellant's sentence, particularly the bad-conduct discharge, is inappropriate; and (2) trial defense counsel were constitutionally ineffective by failing to "request disapproval of the adjudged forfeitures, any deferments, or a waiver of automatic forfeitures from the convening authority." Finding no error materially prejudicial to the substantial rights of Appellant, and exercising our responsibility to affirm only so much of the sentence that is correct in law and fact and should be approved, Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1), the court affirms the findings of guilty and the sentence.

## I. BACKGROUND

The military judge conducted an inquiry with Appellant before finding his guilty pleas provident. As a factual basis for accepting those pleas, the military judge relied on a stipulation of fact between Appellant, Appellant's counsel, and trial counsel in addition to Appellant's sworn statements during the providence inquiry. During that inquiry, Appellant admitted touching, without consent, two women who were friends with his wife. The incidents happened in March 2019 after a party hosted by Appellant and his wife to celebrate their daughter's first birthday. During the party, Appellant's wife excused herself and went upstairs to put their daughter to bed and did not return. Appellant,

---

[1] References to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] In exchange for Appellant's pleas of guilty, the convening authority undertook to dismiss with prejudice two charges and four specifications alleging sexual misconduct against the same victims in violation of Article 120, UCMJ, 10 U.S.C. § 920. The entry of judgment correctly records each dismissal with prejudice.

the two women, and other guests remained downstairs, consuming alcohol and playing video games.

After the party, as both women slept downstairs, Appellant touched each in succession. The first woman was "confused initially who was touching her," and it "continued for several minutes." When she turned to see who it was, she saw Appellant's hand extended out towards her, and he then "slowly moved his arm back to himself." Appellant touched the second woman in the same way as the first: she "woke up to the feeling of someone touching her buttocks and lower back underneath the comforter, and [it] continued for what felt like five minutes." When she looked to see who was touching her she saw it was Appellant. She then got up and "hid in the bathroom for approximately [ten] minutes" before confronting Appellant, still agitated and distressed by what he had done. In the commotion that followed, Appellant denied touching her and went upstairs where his wife and daughter had been sleeping. In time, Appellant told his wife he touched both women "because he had the opportunity to do so."

After learning that her husband inappropriately touched her friends, Appellant's wife was "very clear" with Appellant that she did not want him to touch her. As stipulated by Appellant, his wife

> had confronted [Appellant] about the allegations regarding her two friends, and expressed how she found his actions . . . unacceptable. She had further pointed out to him that he knew that [the first woman he touched] had been a previous victim of assault, and therefore would be extremely traumatized by [Appellant] touching [the woman] while [the woman] was sleeping. Because of all of these conversations, [Appellant] knew that [his wife] would not consent to him touching her.

Appellant told the military judge that his "marriage was falling apart" due to the incidents with his wife's friends in March, and based on "previous conversations about this topic" his wife made it clear to him "that she did not want [him] touching her while she was sleeping." Appellant explained he "was trying to become intimate with [his] wife" even though she had previously "woke up" and became "upset" with him for touching her while she slept.

As further stipulated by Appellant, he had the presence of mind to recall these confrontations with his wife, but in July 2019 he "made the decision to touch her on multiple occasions anyway." Under like circumstances as Appellant touched his wife's friends, Appellant admitted that on at least two occasions, his wife awoke to him touching her legs, back, and buttocks with his hand.

## II. DISCUSSION

### A. Sentence Review

In his first assignment of error, Appellant asks whether his sentence is inappropriately severe "when the nature and seriousness of the offenses are juxtaposed against his service record and the entire mass of favorable evidence offered in the Defense's presentencing case."

#### 1. Additional Background

Each of the victims identified in the specifications provided an unsworn statement for consideration by the sentencing authority. The first woman Appellant assaulted recalled "being frozen and not knowing what to do" when she woke to Appellant touching her. She "ha[d] frequent panic attacks" and was "under constant stress and fear." She "had difficulties trusting people" due to sexual abuse that occurred when she was a child. She felt guilty, believing that nothing would have happened to the second victim if she had spoken up. The second woman Appellant assaulted said she was "not free" from thoughts about the incident even with the passage of time. She struggled with intimacy and "years of getting over the pain of feeling uncomfortable with [her] own body." Appellant's wife[3] explained that "[t]he trauma from [Appellant's] battery . . . lives in front of [her], behind [her], next to [her], [and] inside [her] every single day. [Her] life was swallowed by it." Appellant's actions created "a new reality of incessant anxiety and fragility."

In sentencing, Appellant presented evidence he is a devoted father and of his positive duty performance and service record as a first-term Airman. After the death of his father, Appellant stepped up to take care of his mother and sister. Character statements noted Appellant's exceptional military bearing, and described him as an Airman who would finish his work by the book and then circle back to help others. His service record contained no adverse information. The Government concedes in this appeal that Appellant "presented a solid mitigation case."

#### 2. Law and Analysis

A Court of Criminal Appeals (CCA) reviews de novo the question whether all or part of a sentence is inappropriate. *See United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). In conducting this review, a CCA may affirm only "the sentence or such part or amount of the sentence" as it finds "correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ. It follows that a sentence should be approved only to the extent it is found appropriate based on a CCA's review of the entire record.

---

[3] Appellant and his wife divorced before sentencing.

We assess whether a sentence is inappropriate "by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)). Although we are empowered to "do justice" in reference to a legal standard, we have no discretion to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

We have considered the particular circumstances of Appellant's case, including his convictions for assault consummated by a battery of three women in succession, including his spouse on divers occasions. The military judge, as the sentencing authority, was required to consider "the financial, social, psychological, or medical well-being of any victim of the offense" when reaching an appropriate sentence. Rule for Courts-Martial 1002(f)(2)(A). Statements admitted during pre-sentencing showed the emotional harm Appellant caused three victims whom he abused under similar circumstances. Undeterred from the confrontation with his second victim, Appellant's later misconduct with his wife on divers occasions is especially aggravating.

We have also given individualized consideration to Appellant, the nature and seriousness of the offenses, matters in extenuation and mitigation, Appellant's record of service, and all other matters contained in the record of trial. Under the court's sentence appropriateness authority, we conclude that Appellant's sentence, including a bad-conduct discharge, is not inappropriate.

## B. Effective Assistance of Counsel

In his second assignment of error, Appellant contends that trial defense counsel provided constitutionally ineffective assistance during post-trial representation by failing to seek financial relief from the convening authority. To that end, the record indicates trial defense counsel did not request the adjudged forfeitures be disapproved, or ask the convening authority to waive automatic forfeitures for the benefit of Appellant's dependent daughter. Trial defense counsel also did not request any deferment in the effective date of the adjudged reduction in rank or adjudged forfeitures. On appeal, Appellant posits "[t]here can be no reasonable justification for failing to request the convening authority to waive forfeitures in order to secure thousands of dollars of directed income for the dependent." We are not persuaded.

### 1. Additional Background

Appellant delivered an unsworn statement to the military judge, asking for consideration be given to his financial situation. In his telling,

> I'm a now divorced single father. I work hard to provide for my daughter. She is the light of my life and not being a part of her

> life will be devastating to me. I'm also concerned that my daughter is going to have to rely on welfare for her well-being. Recently, I've been getting things in order to where I could have a place on my own and pay my bills on time. But if I'm no longer employed by the Air Force, the road back to financial stability will be steep and long. Finding a job will be hard enough with a conviction, so I ask you to spare me from a bad-conduct discharge.

Appellant received written advice from trial defense counsel regarding his post-trial and appellate rights. That advice informed Appellant of his right to ask the convening authority to defer any adjudged and automatic forfeitures, and reduction in rank. Appellant was also advised in writing of his right to ask the convening authority to waive any or all automatic forfeitures for the purpose of providing support for his dependent. Appellant signed on the last page of the written advice, representing, "I have read and understand my post-trial rights and appellate rights, as stated above." Trial defense counsel confirmed on the record that Appellant received this advice "orally and in writing."

Appellant did not submit a deferral or waiver request to the convening authority. In clemency, his one request was for the convening authority to "consider mitigating or suspending his reduction in rank." Appellant's wife also provided a clemency submission. She explained, "There is *no adverse financial consequence* to me or my daughter with [Appellant's] bad conduct discharge. I am in a position where *I know we will both be supported* despite the cut to his pay while he fulfills his sentence and when he leaves the military." (Emphasis added).

### 2. Law and Analysis

Appellant bears the burden to show trial defense counsel was constitutionally ineffective. *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)). In evaluating whether Appellant has met that burden, we consider "whether counsel's performance fell below an objective standard of reasonableness." *United States v. Gutierrez*, 66 M.J. 329, 331 (C.A.A.F. 2008).

Appellant has not met his burden to show that his counsel's performance was objectively deficient, much less meet his factual burden that he ever sought relief, or that there was a "reasonable probability" that "the convening authority would have granted" such request as he asserts on appeal. "When factual information is central to an ineffectiveness claim, it is the responsibility of the defense to make every feasible effort to obtain that information and bring it to the attention of the appellate court." *United States v. Moulton*, 47 M.J. 227, 230 (C.A.A.F. 1997).

Appellant cites no case, and we find none, that would require trial defense counsel to press every conceivable advantage during post-trial processing, and do so absent direction from a client. We conclude that Appellant has the burden to show he directed trial defense counsel to submit a deferment or waiver request, who then failed to comply with his instructions. Appellant has not met that burden. Even on appeal, Appellant offers no declaration to bring information to the attention of the court. On this record, there is no basis to conclude that Appellant sought, much less wanted, or would have received relief he now claims trial defense counsel was deficient in failing to obtain. Appellant's speculative claim is especially peculiar because it stands in stark contrast to his wife's statement disavowing present or future financial hardship of their daughter.

We find no merit to this assignment of error.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

7