# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

_____

No. ACM S32716

_____

### UNITED STATES
*Appellee*

v.

### Javohn I. JOURNIGAN
Airman Basic (E-1), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 28 November 2022

_____

*Military Judge:* Thomas A. Smith.

*Sentence:* Sentence adjudged 10 September 2021 by SpCM convened at Barksdale Air Force Base, Louisiana. Sentence entered by military judge on 30 September 2021: Bad-conduct discharge and confinement for 60 days.

*For Appellant:* Major Abhishek S. Kambli, USAF.

*For Appellee:* Major Morgan R. Christie, USAF; Major John C. Patera, USAF; Captain Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before KEY, RAMÍREZ, and GRUEN, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge KEY and Judge GRUEN joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

RAMÍREZ, Judge:

A military judge found Appellant guilty, in accordance with his pleas and pursuant to a plea agreement, of five specifications of wrongful use of a controlled substance in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1]

Appellant's plea agreement provided, among other things, that if the military judge did not adjudge a bad-conduct discharge, no term of confinement would exceed 75 days; that if the military judge adjudged a bad-conduct discharge, no term of confinement would exceed 60 days; and that any terms of confinement would run concurrently. The military judge sentenced Appellant to a bad-conduct discharge, 30 days of confinement each for two specifications of marijuana use, 60 days of confinement each for two specifications of subsequent marijuana use, and 45 days of confinement for a specification of methamphetamine use, with all periods of confinement running concurrently. The convening authority took no action on the findings or the sentence.

Appellant raises one issue on appeal, which we have reworded: whether Appellant's trial defense counsel were ineffective for failing to present specific evidence in mitigation and extenuation during presentencing. We find they were not and affirm the findings and sentence.

## I. BACKGROUND

During the spring and summer of 2021, while stationed at Barksdale Air Force Base, Louisiana, Appellant's urine tested positive for methamphetamine on one occasion and marijuana on multiple occasions. These results led to criminal charges and, eventually, Appellant's guilty pleas at his court-martial. Appellant was represented by two military defense counsel.

During the presentencing phase of Appellant's court-martial, the Prosecution submitted its documentary evidence. Prosecution Exhibit 4 was a record of nonjudicial punishment. When that exhibit was offered, trial defense counsel objected to the portion that contained Appellant's response. After hearing arguments from both sides, the military judge sustained the objection and the response was removed from the exhibit. The Prosecution then offered Prosecution Exhibit 5, which was a letter of reprimand (LOR) that had two attached memoranda for record (MFRs). Trial defense counsel objected to admission of both MFRs; the military judge sustained the objection and the MFRs were removed from the exhibit.

---

[1] All references in this opinion to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

The Defense did not submit any documentary evidence during the presentencing phase, but Appellant read an unsworn statement.

Appellant claims trial defense counsel were ineffective during the presentencing phase of his court-martial. He states his counsel had character letters and photographs in their possession that were ready to be presented to the military judge for sentencing, and yet chose not to attempt to admit them. To support his claim, Appellant moved to attach a declaration, which we granted.

In his declaration, Appellant states that he provided his trial defense counsel character statements and photographs. Appellant further explains that prior to sentencing, he understood "based on communications with [his] trial defense counsel that the character letters and photographs would be presented to the military judge." However, according to Appellant's declaration, he "was notified by [trial] defense counsel at the last minute that they would not be presented." Appellant explains that he does "not remember the specific reason they gave for it but [he] trusted their judgment since [he is] not a lawyer."

In response to an order from this court, trial defense counsel, Captain (Capt) AF and Capt CR, provided responsive declarations.[2] In her declaration, Capt AF explains their "strategic decision not to relax the rules of evidence under [Rule for Courts-Martial (R.C.M.)] 1001(d)(3)."[3] Capt AF continues that, if they had requested to "relax[ ] the rules, there were several pieces of detrimental evidence the Government appeared ready to introduce into evidence during presentencing." Capt AF describes two pieces of "detrimental evidence" at issue which the Defense was successful in keeping out of the Government's presentencing case, the exclusion of which led to the Defense's decision not to relax the sentencing rules.

First, trial defense counsel sought to avoid introduction of Appellant's response to nonjudicial punishment for drug use which included the following statements: "I cannot admit to using [d]-[a]mphetamine because I did not use anything except marijuana. I cannot even begin to think of how that could be in my system" and "this misconduct is out of character for me and will never happen again." Capt AF explains that trial defense counsel "made the strategic

---

[2] We considered Appellant's declaration, the other filings, and the declarations of trial defense counsel to resolve the claim of ineffective assistance of counsel. *See United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020) (noting Courts of Criminal Appeals may consider declarations "when necessary for resolving claims of ineffective assistance of trial defense counsel").

[3] As discussed below, the Defense would have had to request to relax the rules of evidence pursuant to R.C.M. 1001(d) to present these matters in extenuation and mitigation over the Prosecution's objection.

decision that keeping this evidence out was more effective for the defense strategy (for example, to prevent the Government from using these statements to draw conclusions about [Appellant]'s honesty or rehabilitative potential) than relaxing the rules to admit defense exhibits." Additionally, the document that the Prosecution admitted into evidence was missing a page which contained the commander's reprimand. According to Capt AF, in the written "reprimand, the [c]ommander stated the amount of d-amphetamine for which [Appellant] tested positive [was] 2623 ng/mL, and [trial defense counsel] decided not to draw this to the Government's attention and not give [the Government] extra time to correct the exhibit."

The second item of evidence consisted of attachments to an LOR, which included two MFRs from Appellant's supervisors detailing how Appellant had lied to his supervisor by claiming he did work when he had not and asked a senior airman to lie for him about being late. The MFRs also outlined the extent to which Appellant made false official statements to his supervisors; additional violations of the UCMJ; and the negative mission impact Appellant's conduct had on the unit.

Capt AF explains that trial defense counsel

> made the strategic decision that keeping this evidence out was more effective than relaxing the rules for any defense exhibits, particularly given that the Government was not able to obtain mission impact evidence through their witness and did not otherwise have matters in aggravation or evidence of poor rehabilitative potential beyond the number of uses.

Regarding potential defense exhibits, Capt AF states in her declaration that Appellant provided the defense team with the names of eight individuals who could potentially provide character letters, and that each was contacted. However, only three individuals provided character letters: Appellant's wife, Senior Airman (SrA) AB, who only knew Appellant as a family friend and not in his military capacity, and another Airman. Capt AF explains that one of those character letters "had the potential to conflict with [Appellant's] unsworn statement." Capt AF acknowledges that Appellant provided family pictures, but no "pictures of coins, awards, citations, or other accolades."

Capt AF concludes her declaration by summarizing the reason why the Defense chose not to admit character statements and photos.

> Based on the negative impact the [P]rosecution's rebuttal evidence could have had on his sentence, and our ability to present compelling mitigation information regarding [Appellant]'s family struggles through his unsworn statement, we made the stra-

tegic decision not to request that the rules be relaxed and accordingly did not present the above-mentioned character letters and photo array exhibit. Ultimately, given what the Defense perceived as missteps in the [P]rosecution's presentencing case, the Defense team evaluated the mitigation evidence in our possession and compared it to what we felt confidently would be utilized as rebuttal evidence. We made the deliberate and strategic decision to prevent the Government from admitting aggravating evidence against [Appellant].

Capt AF provides five attachments to her declaration to support her factual assertions: the nonjudicial punishment reprimand, the character statements that the defense team received, and the photographs that Appellant provided to his defense team.

Appellant's other trial defense counsel, Capt CR, also provided a declaration. This declaration was consistent with Capt AF's in all respects including that their decision was a strategic one.

Capt CR provided seven attachments to her declaration to support her factual assertions—the non-judicial punishment reprimand, evidence from the letter of reprimand, the email requesting character letters, the character statements that the defense team received, and the photographs that Appellant provided to his defense team.

The Government acknowledges that trial defense counsel possessed sentencing exhibits that they could have admitted. However, it argues their decisions were strategic and reasonable, and that they thought through the ramifications of relaxing the rules. The Government also points out that trial defense counsel "took the time to explain their strategic decision and the way forward in sentencing to Appellant when they took a break before their sentencing case-in-chief" and that "Appellant admitted his counsel explained why they were not admitting the character letters and photographs."

In Appellant's reply brief, he argues that the relaxation of the rules would not have opened the door to allow the Prosecution to admit the aggravating evidence that trial defense counsel wanted to keep out.

## II. DISCUSSION

### A. Law

We review claims of ineffective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citation omitted). Appellate courts give great deference to trial defense counsel's judgments and presume "counsel's conduct falls within the wide range of reasonable professional assistance."

*United States v. Morgan*, 37 M.J. 407, 409 (C.M.A. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Ineffective assistance of counsel claims are analyzed under the test set out by the United States Supreme Court in *Strickland*: "(1) whether counsel's performance fell below an objective standard of reasonableness, and (2) if so, whether, but for the deficiency, the result would have been different." *United States v. Gutierrez*, 66 M.J. 329, 331 (C.A.A.F. 2008) (citations omitted). An appellant has the burden to demonstrate "both deficient performance and prejudice." *Id.* (citation omitted).

In conducting an analysis of an ineffective assistance of counsel claim, courts begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). "[T]he burden rests on the accused to demonstrate a constitutional violation." *Id.* An accused overcomes the presumption of competence only when he shows there were "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[4] *Strickland*, 466 U.S. at 687.

This court does "not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine[s] 'whether counsel made an objectively reasonable choice in strategy' from the available alternatives." *Akbar*, 74 M.J. at 379 (quoting *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)). For this reason, trial defense counsel receive wide latitude in making tactical decisions. *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (citing *Strickland*, 466 U.S. at 689). This also applies to trial defense counsel's strategic decisions. *Morgan*, 37 M.J. at 410. "[S]trategic choices made by trial defense counsel are virtually unchallengeable after thorough investigation of the law and the facts relevant to the plausible options." *Akbar*, 74 M.J. at 371 (internal quotation marks and citation omitted.) Moreover, when assessing prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation omitted).

In making this determination, courts must be "highly deferential" to trial defense counsel and make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. These principles also apply to counsel's performance during sentencing matters. "When there is an allegation that counsel was ineffective in the sentencing phase of the court-martial, we look to see whether there is a reasonable probability that, but for counsel's error, there would have been a

---

[4] U.S. CONST. amend. VI.

different result." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (internal quotation marks and citation omitted).

"We review a military judge's decision on the admission of evidence in aggravation at sentencing for an abuse of discretion." *United States v. Ashby*, 68 M.J. 108, 120 (C.A.A.F. 2009) (citation omitted). The defense, pursuant to R.C.M. 1001(d), may present matters in extenuation and mitigation for sentencing considerations and may ask the military judge to relax the rules of evidence to do so. The Government may then, pursuant to R.C.M. 1001(e), rely on the relaxed rules to present evidence offered to "rebut matters presented by the defense."

Finally, in determining whether to grant a post-trial hearing to resolve a factual matter pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967), Courts of Criminal Appeals do not "decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *United States v. Ginn*, 47 M.J. 236, 243 (C.A.A.F. 1997). Instead, we employ the six principles articulated by our superior court in *Ginn* for determining whether a *DuBay* hearing is appropriate. 47 M.J. at 248. One principle states that if an appellant's "affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts" without ordering a factfinding hearing. *Id*.

## B. Analysis

We begin by finding that a hearing is unnecessary. While Appellant's affidavit is factually adequate on its face, the Government has provided two affidavits that expressly agree with those facts. The Government agrees, and the declarations confirm, that trial defense counsel had sentencing exhibits that they could have used and chose not to. Thus, we can proceed to decide the legal issue on the basis of those uncontroverted facts.

As to the specific allegation that trial defense counsel's decision amounted to ineffective assistance of counsel, we find to the contrary.

Appellant's argument is that trial defense counsel should have offered the character letters and photographs into evidence for sentencing, because the defense sentencing evidence "would not have opened the door to the Government's prior inadmissible evidence since this defense evidence highlighted [Appellant]'s background and his overall rehabilitation potential." Appellant relies on secondary material within a footnote from our superior court[5] to argue that "[i]t would have been an error for the military judge to allow the [P]rosecution

---

[5] *United States v. Boone*, 49 M.J. 187, 198 n.14 (C.A.A.F. 1998).

to admit these pieces of evidence in its rebuttal case based on the rules of evidence being relaxed because they would have still been inadmissible." Appellant provides us no other support for this proposition, and we cannot find any.

We find that trial defense counsel were working without any assurances that the military judge would rule in their favor regarding whether potential defense evidence would open the door for the Government to rebut that evidence under the relaxed rules. Because of this, trial defense counsel had to make a strategic decision concerning the evidence at their disposal. Ultimately, trial defense counsel made the strategic decision that relaxing the rules in order to present certain matters was not worth the risk. Given the discretionary nature of a military judge's decision as to evidentiary rulings, we will not second-guess trial defense counsel's risk assessment. This is the very reason that we are highly deferential to trial defense counsel in their strategic decisions and why we do not measure any alleged deficiency based on the success of that strategy. *See Akbar*, 74 M.J. at 379. Instead, we examine whether trial defense counsel made an objectively reasonable choice from available alternatives and find that their decision did not fall below an objective standard of reasonableness. In the same way that we do not know what the military judge would have done with the potential prosecution rebuttal evidence, trial defense counsel could not have known with certainty how the military judge might have ruled. What we do know is that trial defense counsel weighed the potential costs of relaxing the Military Rules of Evidence against a possible negative ruling from the military judge on potential rebuttal evidence, and made a strategic decision, a strategic decision that Appellant now challenges. It is clear that trial defense counsel were acting with what they believed were Appellant's defense in mind when they made that decision, and we will not disturb that decision.

Appellant has not met his burden to establish deficient performance, let alone a likelihood of a different result but for trial defense counsel's choices. *See Captain*, 75 M.J. at 103. Accordingly, we grant Appellant no relief on this claim.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and the sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court